NATIONWIDE MUTUAL INSURANCE
COMPANY, Defendant-Appellant,
v.
Janet A. NEVILLE, Administratrix of the
Estate of William Keith Neville,
Plaintiff-Appellee.

No. 1–481A104.

Court of Appeals of Indiana,
First District.

April 29, 1982.

Rehearing Denied June 7, 1982.

Robert A. Fanning, Locke, Reynolds, Boyd & Weisell, Ralph A. Cohen, Ice, Miller, Donadio & Ryan, Indianapolis, G. Terrence Coriden, Lawson, Pushor, Mote & Coriden, Columbus, for defendant-appellant.

Vernon J. Petri, Petri, Fuhs & Doehrman, Indianapolis, Patrick W. Harrison, Cline, King & Beck, Columbus, James G. Holland, Indianapolis, for plaintiff-appellee.

## STATEMENT OF THE CASE

RATLIFF, Presiding Judge.

Nationwide Mutual Insurance Co. appeals from the judgment of the Bartholomew Circuit Court which awarded Janet A. Neville, Administratrix of the Estate of William Keith Neville, thirty thousand dollars ($30,000) as compensatory damages, one hundred forty-five thousand dollars ($145,000) as punitive damages, and fifteen thousand four hundred sixty-eight dollars and forty-nine cents ($15,468.49) interest on her claim for death benefits of William Keith Neville under a group insurance policy. We affirm in part and reverse in part.

## STATEMENT OF THE FACTS

Nationwide Mutual Insurance Co. (Nationwide) and the Indiana Volunteer Firemen's Association, Inc. (IVFA) negotiated a group insurance contract to provide disability and death benefits for members of IVFA. Indiana Volunteer Firemen's Association, Inc. informed Nationwide that it wanted insurance for heart or circulatory malfunctions in addition to the statutorily required coverage. The negotiation process took four to five years to complete. The provision of the policy providing for accidental death benefits reads as follows:

"If Injury or a heart or circulatory malfunction shall result in the death of an Insured, the Company will pay, subject to

the aggregate maximum set forth in Item 3 of the Application, the Accidental Death Benefit set forth therein provided, that if such death is a result of a heart or circulatory malfunction: (a) the first symptoms of such must appear within 24 hours after having participated in the fighting of a fire or other Emergency duty, (b) the Insured is, at the time of such participation, under age 60, (c) the Insured has not previously incurred medical expense for a heart or circulatory condition, and (d) death occurs within 90 days following the date of such participation."

Record at 164. The policy defines injury as follows:

" 'Injury' whenever used in the Policy means injury which causes loss resulting directly and independently, of all other causes, from an accident sustained while the Policy is in force with respect to the Insured, providing such accident and injury was caused by and arose out of the duties of the Insured as a volunteer fireman."

Record at 164.

William Keith Neville (Neville) was a member of the Marietta Volunteer Fire Department. He had been a member of the department for approximately ten years. In the early morning hours of September 30, 1973, Neville was called to fight a house fire. Neville entered and exited the house, which was filled with thick black smoke, two or three times. On each occasion when Neville exited the house, he would clear his throat, cough, and take a deep breath before reentering the house. The last time Neville came out of the house, he was holding his chest and gasping for air. Neville was taken by ambulance to Shelbyville Hospital and then transferred to Johnson County Hospital. Neville suffered from smoke inhalation and a severe myocardial infarction (heart attack). While in the hospital, he had various arrhythmias, a cardiac arrest, and heart failure. After being successfully resuscitated, Neville was treated with drugs for his arrhythmias and heart failure. He progressed quite well, and

plans were being made for his discharge when he died in his sleep on October 30, 1973. The final diagnosis of Neville's condition was acute myocardial infarction—anteriolateral and ventricular flutter (cardiac arrest). The secondary diagnosis was congestive heart failure. An autopsy performed on Neville revealed that he also suffered from arteriosclerosis.

On November 13, 1973, Mrs. Neville, through Fire Chief Isley of the Marietta Volunteer Fire Department, filed a claim with Nationwide for the accidental death benefit of thirty thousand dollars ($30,000) under the policy negotiated by IVFA. Nationwide investigated the claim by correspondence with Dr. John M. Records, Neville's physician, Fire Chief Isley, and the hospital. By a letter dated February 21, 1974, Nationwide advised Fire Chief Isley that it had received all the information submitted on behalf of Mrs. Neville and that it was denying the claim. The reason for the denial of the claim was stated as follows:

"Injury, as used in the Policy, means injury which causes loss resulting, directly and independently, of all other causes, from an accident sustained while the Policy is in force, providing such accident and injury was caused by and arose out of the duties of the Insured as a volunteer fireman. Accidental Death benefits are payable if injury or circulatory malfunction results in the death of an Insured, however, no benefits shall be payable if the Insured has previously incurred medical expense for a heart or circulatory condition. In reviewing the information received, we note that Mr. Neville received a work-up for hypertension in 1968 and had been on medication for this condition since that time. As it appears that Mr. Neville did incur medical expense for a circulatory condition, we would be unable to qualify this claim for benefits."

Record at 171.

Janet Neville, as Administratrix of the Estate of William Keith Neville, filed a complaint in Shelby Circuit Court on Octo-

ber 25, 1974, against Nationwide, alleging Nationwide breached the insurance contract by failing to pay the accidental death benefit. Mrs. Neville prayed for thirty thousand dollars ($30,000) compensatory damages, interest, and one hundred fifty thousand dollars ($150,000) punitive damages because of Nationwide's alleged intentional, wilful, and wrongful conduct in refusing to comply with the terms of the policy. After a change of venue to Bartholomew Circuit Court, trial by jury was had on Mrs. Neville's complaint. The jury returned a verdict of thirty thousand dollars ($30,000) compensatory damages and one hundred forty-five thousand dollars ($145,000) punitive damages. The trial court entered judgment on the verdict and added fifteen thousand four hundred sixty-eight dollars and forty-nine cents ($15,468.49) as prejudgment interest. Nationwide perfected this appeal.

## ISSUES

Nationwide raises the following issues which we have restated and renumbered:

1. Whether the trial court erred in denying Nationwide's second Motion for Summary Judgment.

2. Whether the trial court erred in giving Plaintiff's Final Instruction No. 6 which instructed the jury on proximate cause.

3. Whether the trial court erred in denying Nationwide's Motion for Judgment on the Evidence.

4. Whether the trial court's judgment is not supported by sufficient evidence and is contrary to law.

5. Whether the trial court erred in allowing consideration of the claim for prejudgment interest when there was no mention of prejudgment interest in the pre-trial order and in assessing prejudgment interest.

6. Whether the trial court erred in denying Nationwide's Motion in Limine and to Strike.

7. Whether the trial court erred in denying Nationwide's request for a continuance of the trial since Nationwide's Motion in Limine and to Strike was denied.

8. Whether the trial court erred in giving Preliminary Instruction No. 2 and Plaintiff's Final Instruction No. 3 which instructed the jury that Nationwide had the burden of proving it was not liable for the death benefits under the policy.

9. Whether the trial court erred in giving Plaintiff's Final Instruction No. 1 which instructed the jury on the rules of contract construction.

10. Whether the trial court erred in giving Plaintiff's Final Instruction No. 2 which instructed the jury on the construction of exclusionary provisions in an insurance contract.

11. Whether the trial court erred in giving Plaintiff's Final Instructions Nos. 9 and 10 which instructed the jury on punitive damages.

## DISCUSSION AND DECISION

*Issue One*

Nationwide filed a second motion for summary judgment on January 17, 1980. The basis of its motion was that Neville died of a heart or circulatory malfunction and that he had previously incurred medical expenses for a circulatory condition (hypertension). Nationwide also contended that there were no facts to sustain the punitive damages claim. Mrs. Neville opposed the summary judgment on the grounds that her husband suffered an injury which resulted in his demise and that even if the heart or circulatory malfunction provision of the policy was applicable, there existed a material issue of fact as to whether hypertension is a heart or circulatory condition. The trial court denied Nationwide's motion which Nationwide claims was error.

A trial court may grant a motion for summary judgment only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kendrick Memorial Hospital v. Totten,* (1980) Ind.App., 408 N.E.2d 130. In determining whether a genuine issue of material fact exists, a court will construe all

materials on file liberally in favor of the nonmoving party and will resolve all doubts against the moving party. *Moll v. South Central Solar Systems,* (1981) Ind.App., 419 N.E.2d 154. The trial court in ruling on a motion for summary judgment may not weigh conflicting evidence since summary judgment is not to serve as a substitute for a trial. *Suyemasa v. Myers,* (1981) Ind. App., 420 N.E.2d 1334. If conflicting inferences arise from the facts, summary judgment should not be granted. *Clayton v. Penn Central Transportation Co.,* (1978) Ind.App., 376 N.E.2d 524.

■ Under the terms of the policy in the case at bar, Nationwide was to pay the death benefits if death resulted from (1) an injury or (2) a heart or circulatory malfunction. Only that provision providing for death benefits for a heart or circulatory malfunction was subject to certain exclusions or conditions. Nationwide, on appeal, contends the summary judgment evidence indicated Neville died as a result of a heart or circulatory malfunction and incurred medical expenses for a heart or circulatory condition and thus under the terms of the policy, he was not entitled to coverage. We disagree with Nationwide and find a material issue of fact existed as to whether Neville was covered under the policy.

Although the cause of death was listed as cardiac arrest and severe myocardial infarction on Neville's death certificate, there existed a material issue of fact as to whether Neville died as a result of an injury or as a result of a heart or circulatory malfunction. Doctor John Records in his deposition made it clear that in his opinion the stress of the firefighting and the smoke which Neville inhaled caused the thrombosis which caused the myocardial infarction. Nationwide, however, contends in its reply brief that even if an injury was a precipitating event of Neville's death, the death itself resulted from a heart malfunction and was subject to the conditions or exclusions of the policy. This contention is not persuasive for two reasons. First, it merely is a reiteration of the argument that Neville's death was not as a result of an injury. We have already found a material issue of fact existed as to whether Neville died as a result of an injury or heart malfunction. Second, if one assumed the injury was the precipitating event and the heart attack, although the end result, was the natural and probable consequence, then the injury is the proximate cause of Neville's death. *See Continental Casualty Co. v. Lloyd,* (1905) 165 Ind. 52, 73 N.E. 824.

■ Finally, Nationwide in arguing the trial court erred by denying its motion for summary judgment refers this court to the fact that Mrs. Neville did not file any affidavits or any other evidence to controvert its motion. Nationwide correctly asserts that a nonmoving party cannot rest on the mere allegations of the complaint or argumentative brief when a motion for summary judgment has been filed and supported. However, such a fact does not require the trial court to enter summary judgment for the moving party. As stated by Judge Garrard in *Letson v. Lowmaster,* (1976) 168 Ind.App. 159, 163, 341 N.E.2d 785, 788:

> "This portion of the rule cannot be disregarded. The failure of the opposing party to file affidavits, etc. will not by that fact alone render him liable to judgment. TR. 56(c); *Walker v. Statzer* (1972), 152 Ind.App. 544, 284 N.E.2d 127. On the other hand, where the materials filed by the moving party do establish the lack of any genuine issue of material fact, it is incumbent upon the opposing party to comply with the above-quoted requirement of TR. 56(E). If he does not do so *and* upon the basis of the materials before the court, the movant is entitled to judgment *as a matter of law,* summary judgment may be entered against him." (Footnote omitted, original emphasis.)

Having found a material issue of fact to exist, we hold the trial court did not err by denying Nationwide's Motion for Summary Judgment.

*Issue Two*

■ The trial court during final instructions gave to the jury Mrs. Neville's Plaintiff's Final Instruction No. 6 which stated:

"Under Indiana law when a policy, such as the one in question, requires that a fatal injury directly and independently of all other causes result in the death, it is requiring that the injury be the proximate cause of death.

"You are instructed that if an act sets in motion a force that progresses upon existing conditions, in natural and usual sequence, to effect a result, the act may be found to be the proximate cause of the result.

"Therefore, if you find that an injury set in motion the bodily reactions that progressed upon Mr. Neville's existing health condition, in natural and usual sequence, resulting in his death, you may find that the injury was the proximate cause of death, and if you further find that the injury arose from Mr. Neville's duties as a volunteer firemen [sic] you may find for the plaintiff and against the defendant."

Record at 822. This instruction, Nationwide contends, is erroneous because it misstates the policy definition of injury and applies a tort theory of proximate cause rather than the policy language of an "injury which causes loss resulting directly and independently, of all other causes, from an accident." Mrs. Neville counters that Plaintiff's Final Instruction No. 6 is a correct statement of the law and cites to us *American States Insurance Co. v. Morrow*, (1980) Ind.App., 409 N.E.2d 1140, *trans. denied.*

Nationwide's first contention that Plaintiff's Final Instruction No. 6 misstates the definition of injury contained in the policy will not be addressed by this court. Since Nationwide failed to object at trial to the instruction on this ground, such objection is waived on appeal. *See Ralston v. State*, (1980) Ind.App., 412 N.E.2d 239, *trans. denied.*

Nationwide also argues Plaintiff's Final Instruction No. 6 erroneously applies the tort standard of proximate cause rather than the policy language. Such action, Nationwide states, changes the contractually expressed intentions of the party by with-drawing from the jury's consideration the "independent" requirement of the contract. Nationwide argues further that it allows the jury to find Neville died as a result of an injury even if his preexisting arteriosclerosis was a contributing cause of his death contrary to the general rule "that where some preexisting medical condition causes or contributes to the loss sustained, a direct and independent injury has not occurred and coverage for the injury must be denied. *Bewley v. American Home Assurance Co.*, [ (10th Cir. 1971), 450 F.2d 1079.]" Brief for Appellant at 114.

Although it is true that some jurisdictions hold that where some preexisting medical condition causes or contributes to the loss sustained, a direct and independent injury has not occurred and coverage must be denied, *see Bewley v. American Home Assurance Co., supra*, and cases cited in 44 Am. Jur.2d, *Insurance*, § 1271 (1969), Indiana does not follow this rule. In *Continental Casualty Co. v. Lloyd*, (1905) 165 Ind. 52, 73 N.E. 824, a beneficiary under an accident insurance policy sued Continental for the proceeds under the policy. On October 3, 1901, the plaintiff's husband struck his toe while walking on a sidewalk and fell. The fall caused a cerebral hemorrhage which caused the insured's death. An autopsy performed on the insured disclosed that he had a brain tumor surrounding the right middle cerebral artery. The physician who treated the deceased testified that the cause of death was the hemorrhage precipitated by the fall. However, the wall of the artery had been weakened by the tumor, and Continental produced evidence at trial contradictory of the hemorrhage theory. On appeal, Continental contended there was insufficient evidence to support the jury's verdict because the evidence showed the insured's death was due partly from accident and partly from the diseased and weakened condition of the artery. The language in the policy limited the liability of Continental to "bodily injuries effected through external, violent and purely accidental causes—such injuries as shall, solely and independently of all other causes, necessarily result in death within ninety days."

165 Ind. at 59, 73 N.E. 824. Our supreme court in affirming the jury's verdict for Lloyd discussed this provision in the policy at 165 Ind. at 59–60, 73 N.E. 824:

> "The causes referred to in this class of instruments relate to proximate, and not remote, causes. *National Benefit Assn. v. Grauman* (1886), 107 Ind. 288, 290 [7 N.E. 233]; *Fetter v. Fidelity, etc., Co.* (1903), 174 Mo. 256, 73 S.W. 592, 61 L.R.A. 459, 97 Am.St. 560.
>
> "When two or more causes contribute to an injury, where there is doubt, or the facts of a character that equally prudent persons would draw different conclusions therefrom, in such cases, which of the contributing causes is the efficient, dominant, proximate cause, is a question to be submitted to the jury. (Citations omitted)."

Thus, it is clear the term causes used in an insurance policy clause such as the one in the case at bar means proximate cause. *See American States Insurance Co. v. Morrow*, (1980) Ind.App., 409 N.E.2d 1140, *trans. denied.* We find no error in the giving of Plaintiff's Final Instruction No. 6.

*Issues Three and Four*

■ Nationwide contends the trial court erred in denying its motion for judgment on the evidence and that the judgment is not supported by sufficient evidence and is contrary to law with regard to both compensatory and punitive damages. A motion for judgment on the evidence must be denied when there is any evidence or legitimate inference therefrom tending to support at least one of the allegations. *Vernon Fire & Casualty Insurance Co. v. Sharp*, (1976) 264 Ind. 599, 349 N.E.2d 173. Thus issues three and four will be reviewed by one discussion of the evidence for if we find sufficient evidence to support the judgment, the motion for judgment on the evidence was properly denied. Furthermore, we note that a general judgment will be affirmed if sustainable on any legal theory. *Indiana & Michigan Electric Co. v. Schnuck*, (1973) 260 Ind. 632, 298 N.E.2d 436.

■ The crux of Nationwide's argument under these issues is its contention that Neville died as a result of a circulatory or heart malfunction and not as a result of an injury. Since the evidence, according to Nationwide, shows Neville had previously incurred medical expenses for a heart or circulatory condition, there is not sufficient evidence to support the court's judgment. Mrs. Neville counters that there is sufficient evidence to sustain the judgment under the injury provision of the policy. Nationwide, however, argues that even if the injury provision of the policy is applicable, it requires the injury be the direct and independent cause of death, which in this case is not true. Assuming that Neville suffered from smoke inhalation, Nationwide states, it was not the independent cause of his death because Neville's arteriosclerosis contributed to his demise.

After thoroughly examining the evidence, we find the evidence as to the cause of Neville's death to be conflicting. Although Neville's death certificate listed severe myocardial infarction and cardiac arrest as the cause of death, there was evidence that the precipitating factor of the heart attack was the stress of firefighting and the smoke inhalation which caused even less oxygen to move through Neville's already occluded veins. Doctor Records explained the effects of carbon monoxide in the blood stream. He stated the red blood cells have a greater affinity for carbon monoxide than oxygen, and therefore those cells carry the carbon monoxide rather than the needed oxygen. The carbon monoxide absorbs into the muscle tissue, and some of the cells die because they cannot function with carbon monoxide. Doctor Records further stated that as a result of the smoke and carbon monoxide, either Neville's arteries tightened more or not a sufficient amount of oxygen was getting through them, and Neville suffered a heart attack. It was Dr. Records' opinion that if Neville had not been fighting the fire that evening, he would not have had a heart attack. However, Dr. Records also admitted later that he had made a previous statement that Neville could have had a heart attack in his

sleep. Given our well recognized standard of appellate review, *i.e.*, that we will not reweigh the evidence and will view the evidence in a light most favorable to the judgment—we find this conflicting evidence sufficient to uphold the jury's verdict under the injury coverage of the policy.

Nationwide, however, argues that even if Neville suffered from smoke inhalation, it was not the independent cause of his death since arteriosclerosis contributed to his death. This court faced the same issue in *American States Insurance Co. v. Morrow, supra.* In *Morrow,* the plaintiff's husband was a fireman with the Evansville Fire Department, and he died as a result of a myocardial infarction which occurred due to smoke inhalation he suffered while fighting a fire. After Morrow's death, an autopsy revealed that he suffered from arteriosclerotic heart disease. However, he had not experienced any symptoms prior to his heart attack. On appeal, American States contended there was insufficient evidence to support the verdict because the arteriosclerotic heart disease was a proximate cause of death, and therefore, the death was excluded from coverage. The pertinent coverage portions of the policy were set out as follows:

> "The coverage portion of the policy issued to the City of Evansville provided that payment would be made:
>
> > 'If any individual suffers a loss specified below, directly and independently of all other causes as a result of bodily injury effected solely through external violent and accidental means . . .'
>
> The policy also contained a limitation that benefits would not be paid for death or other loss resulting directly or indirectly '(g) from bodily or mental infirmity or disease in any form. . . .' "

409 N.E.2d at 1141. This court, in affirming the trial court applied the following definition of proximate cause declared by our supreme court in *Continental Casualty Co. v. Lloyd, supra,* 165 Ind. at 64, 73 N.E. 824:

> " 'The law will not go farther back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consquence [sic], in view of the existing circumstances and conditions. The law does not consider the cause of causes beyond seeking the efficient predominant cause, which, following it no farther than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect. An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so, as well when death comes through the medium of a disease directly induced by the injury, as when the injury immediately interrupts the vital processes.' "

This court found that notwithstanding the arteriosclerotic heart disease, there was sufficient evidence to sustain the jury's determination that smoke inhalation was the proximate cause of Morrow's death. As Judge Robertson stated in *Morrow, supra,* at 1142, quoting from *Graham v. Police & Firemen's Insurance Association,* (1941) 10 Wash.2d 288, 116 P.2d 352, 355, " 'where disease merely contributes to the death or accident, after being precipitated by the accident, it [the disease] is not the proximate cause of the death or injury, nor a contributing cause, within the meaning of the terms of the policy.' "

Just as in *Morrow,* there is evidence in the case at bar which shows the smoke inhalation and physical exertion required to fight the fire precipitated the myocardial infarction. Although Neville's arteriosclerosis might have contributed to his death, there was no error in the jury's decision that the proximate cause of death was the injury which set in motion the chain of events which resulted in Neville's demise.

We turn now to the issue of whether there is sufficient evidence to uphold the jury's verdict on punitive damages. Nationwide states there is no evidence that it acted maliciously, oppressively, or with

fraud in the denial of Mrs. Neville's claim and thus the judgment cannot stand. Mrs. Neville counters that Nationwide's construction of the insurance policy so as to deny the benefits was absurd and so unreasonable as to constitute bad faith, malice, or oppressive conduct.

In contract cases, such as the one at bar, punitive damages are not generally awarded. *Vernon Fire & Casualty Insurance Co. v. Sharp,* (1976) 264 Ind. 599, 349 N.E.2d 173. However, there are two well recognized exceptions to the general rule that punitive damages are not awarded in contract actions. When the conduct of the breaching party not only amounts to a breach of contract, but also independently establishes the elements of a common law tort such as fraud, punitive damages will be awarded. *Id.* They will be awarded also when the wrong is not an independent tort, but the controversy is mingled with elements of fraud, malice, gross negligence, or oppression and the public interest will be served by the deterrent effect of punitive damages. *Jones v. Abriani,* (1976) 169 Ind. App. 556, 350 N.E.2d 635. In the case of *First Federal Savings and Loan Association v. Mudgett,* (1979) Ind.App., 397 N.E.2d 1002, 1006–07, this court discussed what evidence is necessary to recover punitive damages under either exception:

"Under the first basis of recovery under *Vernon, supra,* there must be evidence to support a finding that the defendant committed an intentional tort independent of the breach of contract. To establish the common law tort of fraud or deceit, the evidence must show several elements including the false representation of a fact accompanied by the knowledge or belief that the representation was false, or evidence that a promise was made contemporaneously with a lack of intention to keep it. *Kidd v. Kidd* (1968) 143 Ind.App. 648, 242 N.E.2d 385.

Under the second basis of recovery under *Vernon, supra,* there must be evidence of 'fraud, malice, gross negligence or oppression' mingled in the controversy.

Fraud is defined as:

'The intentional deception, relied upon by another which induces him to part with property or surrender a legal right...' *Guy v. Schuldt* (1956) 236 Ind. 101, 138 N.E.2d 891.

or as:

'A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, truck, cunning, dissembling, and any unfair way by which another is cheated.' Black's Law Dictionary 788 (rev. 4th ed. 1968).

Malice is:

'The intentional doing of a wrongful act without just cause or excuse with an intent to inflict an injury or under circumstances that the law will imply an evil intent.' Black's Law Dictionary 1109 (rev. 4th ed. 1968).

Oppression is defined in *Vernon, supra,* 349 N.E.2d at 184, as:

'An act of cruelty, severity, unlawful exaction, or excessive use of authority.'

Gross negligence is equated with fraud, malice and oppression in *Prudential Ins. Co. v. Executive Estates* (1977) Ind.App., 369 N.E.2d 1117, where Judge Buchanan also discussed at great length the allegation of 'heedless or reckless disregard of the consequences,' which was also pleaded by the plaintiffs in the case at bar. Judge Buchanan said, in 369 N.E.2d at 1131–1132:

'That a heedless or reckless disregard of consequences will support punitive damages is recognized in principle more that actuality ... the phrase being enumerated along with other descriptive terms in cases dealing with more oppressive behavior of the wrongdoer. See, e.g., *Nicholson's Mobile Home Sales, Inc. v. Schramm* (1975), 164 Ind.App. 598, 330 N.E.2d 785; *Lou Leventhal Auto Co., Inc. v. Munns* [ (1975) [164 Ind.App. 368], 328 N.E.2d 734], *supra.*

The phrase also appears to be used as an alternative to the description of more oppressive conduct. *Harness v. Steele* (1902), 159 Ind. 286, 64 N.E. 875; *Citizens' Street R. R. v. Willoeby* (1893), 134 Ind. 563, 33 N.E. 627.

When specific conduct has been characterized as a heedless or reckless disregard of consequences, the conduct would appear to be more accurately characterized as a conscious and intentional wrongdoing better described by such words as oppression or malice. In *Bob Anderson Pontiac, Inc. v. Davidson* (1973), 155 Ind.App. 395, 400, 293 N.E.2d 232, 235, the facts centered on consumer fraud (altered automobile odometer and misrepresented condition) which the court also characterized as a "negligent or wilful misrepresentation of a material fact inducing the entry into a contract." *Capitol Dodge, Inc. v. Haley* (1972), 154 Ind.App. 1, 288 N.E.2d 766 likewise dealt with consumer fraud-inducing a sale by promising nonexistent insurance coverage.

In two cases in which the court spoke *only* of a heedless disregard of consequences, a more conscious and direct type of behavior was nevertheless included. The wrongdoer in *True Temper Corp. v. Moore* (1973), 157 Ind.App. 142, 299 N.E.2d 844, bought and cut standing timber from a seller known not to own the land. The wrongdoer's conduct in *Jones v. Hernandez* (1970), 148 Ind.App. 17, 263 N.E.2d 759, was just as direct and conscious ... charging an electric fence with 110 volts to keep neighboring farm laborers away.

So it seems reasonable to conclude that something more that a state of mind described as heedless disregard of the consequences is required to justify imposition of punitive damages. The cases seem to have dealt with a state of mind demonstrating actual malice or a wantonness from which the law could imply malice. None in Indiana have [sic] yet gone so far as to support or award punitive damages solely on the basis of a concept of heedless disregard

of the consequences, which might also be described as constructive malice.

Prudential's conduct, measured by any of these standards, falls short of constituting an independent tort of such a reprehensible nature as to justify imposition of punitive damages.

\* \* \* \* \* \*

However, our inquiry does not cease with the determination that Prudential's conduct does not evidence an independent tort of a reprehensible nature. We must also ask whether "elements of fraud, malice, gross negligence or oppression mingle" with the breach of the contractual promises made by Prudential so as to support an award of punitive damages. See *Hibschman Pontiac, Inc. v. Batchelor* (1977), [266 Ind. 310], 362 N.E.2d 845; *Vernon Fire & Cas. Ins. Co. v. Sharp* (1976), [264 Ind. 599], 349 N.E.2d 173; *Joseph Schlitz Brewing Co. v. Central Beverage Co., Inc.*, [172 Ind.App. 81], 359 N.E.2d 566; *Jones v. Abriani* (1976), [169 Ind.App. 556], 350 N.E.2d 635.

An analysis of these cases forces the conclusion that the "tortious conduct" involved is indicative of a state of mind evidencing bad faith: auto dealer avoiding repairs until warrant period expired (*Hibschman*); insurer refusing to pay claimant as means of forcing a third party settlement (*Vernon*); brewer terminating agreement with liquor wholesaler in violation of statute (*Joseph Schlitz Brewing Co.*); seller refusing to return deposit upon buyer's rejection of defective mobile home (*Jones*).

Again, Prudential's behavior by any fair appraisal falls short of "fraud, malice, gross negligence, or oppression." Gross negligence as such, used in this context, has not been defined, but it is reasonable to assume that it refers to the same kind of oppressive conduct symbolized by fraud or malice. See 25 C.J.S. *Damages* § 123(8), at p. 1147 (1966).' (Footnotes omitted, our emphasis.)"

■ Thus, it is clear that something more than a good faith dispute which leads to a breach of contract must be shown to sustain an award of punitive damages. As stated by Judge Neal in *Peterson v. Culver Educational Foundation*, (1980) Ind.App., 402 N.E.2d 448, 457 (transfer pending):

"Courts have long recognized that a good faith dispute as to what a contract requires of a party will never supply the grounds for punitive damages, *Jones v. Abriani* (1976), [169 Ind.App. 556], 350 N.E.2d 635; that the legitimate exercise of the 'right to disagree' may directly result in intentional infliction of temporal damage; but that the infliction of such damage is generally regarded as privileged, *Vernon [Fire & Casualty Insurance Co. v. Sharp*, (1976) 264 Ind. 599, 349 N.E.2d 173.] Courts must be careful not to discourage honest litigation by allowing punitive damages against a party who is merely exercising his right to adjudicate an honest dispute even if he is found to be in error and even if his litigation injures the other party. 8 Ind.Law Review 668, *supra*. In *Vernon, supra*, we also stressed that a promisor's motive for breaching his contract is generally irrelevant and that even a breach indicating substandard business conduct does not entitle the promisee to mulct the promisor in punitive damages."

■ Mrs. Neville, in order to distinguish this case from those in which an insurance company disputes a claim in good faith, argues that the conduct of Nationwide in denying her claim was fraudulent, tortious, and oppressive because the evidence was obvious that her husband died as a result of an injury. Were the evidence so conclusive, we would agree with Mrs. Neville. However, our extensive review of the evidence does not lead to that conclusion.

Although there is sufficient evidence to uphold the judgment for compensatory damages under the injury provision of the policy, we do not find this evidence so overwhelming that Nationwide's conclusion of no liability is so ludicrous and outside the bounds of reason as to be tainted by fraud, oppression, bad faith, or gross negligence. The evidence shows that some of the evidence Nationwide had before it when it denied Mrs. Neville's claim included: (1) a statement of claim for disability benefits completed while Neville was hospitalized which listed the nature of the injury as "overcome by smoke, heart attack," Record at 169; (2) an attending physician's statement dated October 9, 1973 which listed the diagnosis as acute myocardial infarction and probable smoke inhalation, Record at 192; (3) a claimant's statement for death benefits submitted by Mrs. Neville which listed the injury received as "severe myocardial infarction," Record at 187; (4) a newspaper article which stated that Neville died after sustaining a heart attack while fighting a fire, Record at 190; (5) a note by Dr. Records informing Nationwide of Neville's blood pressure readings "to date of smoke inhalation and subsequent severe myocardial infarction," Record at 73; and (6) hospital records which listed the final diagnosis as an acute myocardial infarction-arteriolateral and ventricular flutter, Record at 61.

On the basis of the foregoing information, we hardly find Nationwide's contention that Neville died as a result of a circulatory or heart malfunction to be so ludicrous as to have have been made in bad faith. The information submitted to Nationwide made some reference to smoke inhalation, but made no reference to smoke inhalation as the precipitating factor of Neville's death. Furthermore, this is not a case in which the facts or policy provisions were so clear as to render the dispute over liability to be a heedless disregard of the consequences as in *Rex Insurance Co. v. Baldwin*, (1975) 163 Ind.App. 308, 323 N.E.2d 270. Neither is this a case in which the policy provisions were misrepresented to the beneficiary as in *Travelers Indemnity Co. v. Armstrong*, (1979) Ind.App., 384 N.E.2d 607 (transfer pending), or a case in which the insurance company failed to promptly negotiate or settle a claim as in *Sexton v. Meridian Mutual Insurance Co.*, (1975) 166 Ind.App. 529, 337 N.E.2d 527, for Nationwide contacted Fire Chief Isley once

a month between the time the claim was received and denied. Rather, this case is like *Hoosier Insurance Co. v. Mangino*, (1981) Ind.App., 419 N.E.2d 978, *trans. denied*; it involves a good faith dispute as to Nationwide's liability under the policy. Even though Nationwide did not succeed in convincing the jury of its position with regard to liability, it nonetheless had reasonable grounds to proceed under the theory that Neville's death was not covered under the policy. We find that the jury could not have reasonably concluded that Nationwide's denial of the claim constituted fraud, malice, gross negligence, or oppression.

Mrs. Neville contends Nationwide should have investigated more thoroughly the claim by talking with Dr. Records or Fire Chief Isley. This contention is not sufficient to uphold the award of punitive damages. First, as we have already noted, Nationwide corresponded several times with Fire Chief Isley and also corresponded with Dr. Records. Second, even assuming the investigation of the claim was below industry standards, negligence cannot be the basis for awarding punitive damages. *Prudential Insurance Co. v. Executive Estates*, (1977) Ind.App., 369 N.E.2d 1117, *trans. denied*. Furthermore, Mrs. Neville had an opportunity to submit additional information after her claim was denied, and Nationwide stated that it "would be most happy to review it." Record at 171. Such an attitude on the part of Nationwide can hardly be viewed as indicative of a state of mind evidencing bad faith.

Having found the jury's verdict awarding punitive damages cannot be upheld, we reverse the portion of the judgment which awarded punitive damages.

*Issue Five*

■ A pre-trial conference in the case at bar was held on October 12, 1979, and the trial court entered a pre-trial order. This pre-trial order made no mention of prejudgment interest. On July 25, 1980, a memorandum in support of interest was filed by the plaintiff with the trial court. On the morning of the trial, Nationwide objected to any consideration by the court or jury of prejudgment interest since the alleged right to interest was not set out as one of the issues in the pre-trial order. The trial court overruled the objection and stated that prejudgment interest was a matter of law if there was presented in evidence any showing of an unreasonable period of time between the demand for payment of a claim and the actual payment of the claim. On appeal, Nationwide contends the trial court's consideration and assessment of prejudgment interest was error since prejudgment interest was not listed as an issue within the pre-trial order.

Indiana Rules of Procedure, Trial Rule 16(J) provides for pre-trial orders:

"The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleading, and the agreements made by the parties as to any of the matters considered which limit the issues for trial to those not disposed of by admissions or agreement of counsel, and such order when entered shall control the subsequent course of action, unless modified thereafter to prevent manifest injustice. The court in its discretion may establish by rule a pre-trial calendar on which actions may be placed for consideration as above provided, and may either confine the calender to jury actions or non-jury actions or extend it to all actions."

The effect a pre-trial order has on the subsequent proceedings was stated in *City of Hammond, Lake County v. Drangmeister*, (1977) 173 Ind.App. 476, 364 N.E.2d 157, 161, *trans. denied*:

"A pretrial order delineating the issues of the case supplants the allegations raised in the pleadings and controls all subsequent proceedings in the case. Thus, the issues become those found by the trial court's pretrial order, not the issues raised by allegations in the pleadings. *N. Miami Con. Sch. Dist. v. State* (1973), 261 Ind. 17, 300 N.E.2d 59. *See generally*, Annot., 22 A.L.R.2d 599, § 4, at 607 (1952); 62 Am.Jur.2d, *Pretrial Conference*, §§ 33–35, at 665–668. Issues raised in the pleadings but not stated in

the pretrial order pass out of the case. Issues stated in the pretrial order but not raised in the pleadings are issues properly triable in the case. 3 Moore's Federal Practice, § 16.19, at 1130 (1974)."

However, a pre-trial order can be amended or modified as provided by Ind.Rules of Procedure, Trial Rule 15(B). *North Miami Consolidated School District v. State ex rel. Manchester Community Schools,* (1973) 261 Ind. 17, 300 N.E.2d 59; *Marotta v. Iroquois Realty Co.,* (1980) Ind.App., 412 N.E.2d 797; *Lewis v. Davis,* (1980) Ind.App., 410 N.E.2d 1363. The manner in which T.R. 15(B) coordinates with T.R. 16(J) was discussed by Judge Garrard in *Colonial Mortgage Company of Indiana, Inc. v. Windmiller,* (1978) Ind.App., 376 N.E.2d 529, 534 n.3:

"TR 15(B) regarding amendments to conform to the evidence is not at odds with the foregoing. The purpose of TR 15(B) is to permit amendment where issues not contained in the pre-trial order are in fact litigated by express or implied consent. While it also provides for amendment although an objection has been made that proffered evidence is outside the issues, the court has discretion to grant such amendments; and should not do so where the objecting party establishes that amendment would prejudice him in maintaining his action or defense."

In the case at bar, the trial court's determination that prejudgment interest would be considered constituted an amendment of the pre-trial order. We can review this action on the part of the trial court only for an abuse of discretion. *Dominguez v. Gallmeyer,* (1980) Ind.App., 402 N.E.2d 1295, *trans. den.* Inasmuch as we find the evidence and verdict support the award of prejudgment interest in our discussion below, we find no abuse of discretion on the part of the trial court.

Nationwide also contends the assessment of prejudgment interest was erroneous because certain factual issues should have been resolved to assess it and the trial court did not instruct the jury on those factual issues. Specifically, the trial court stated that interest would be allowable if and only if the jury found that Mrs. Neville was entitled to the life insurance proceeds and the withholding of payment thereon was unreasonable and for a long period of time. The trial court stated that it would equate a verdict for punitive damages with such a finding and would award prejudgment interest if the jury returned a punitive damages award. Nationwide contends that although the trial court equated a punitive damages award with a finding that prejudgment interest was justified, none of the instructions relating to punitive damages incorporated the criteria for assessment of prejudgment interest. Furthermore, Nationwide states, citing *Remington v. Edwards,* (1923) 79 Ind.App. 501, 138 N.E. 824, what constitutes a long and unreasonable delay depends on the circumstances of each case and is ordinarily a question of fact for the jury.

An award of prejudgment interest under Ind.Code 24–4.6–1–103(a),[1] contrary to Nationwide's contention and the position taken by the trial court, does not require a finding of a long and unreasonable delay in the withholding of payment of an amount due. Rather, "it is only necessary to show that the obligor has breached his contract by failing to pay the appropriate amount due or demanded and that such amount can be ascertained as of a particular time in accordance with fixed rules of evidence and known standards of evaluation." (Citation omitted) *Blue Valley Turf Farms v. Realestate Marketing & Development, Inc.,* (1981) Ind.App., 424 N.E.2d 1088, 1091. If the amount of the claim or the due date is in controversy, then the determination of prejudgment interest may be a function of the jury. *See, Southern School Buildings, Inc. v. Loew Electric, Inc.,* (1980) Ind.App., 407 N.E.2d 240, *trans. den.* However, this

---

1. Ind.Code 24–4.6–1–103(a) provides: "Interest at the rate of eight percent [8%] per annum shall be allowed: (a) From the date of settlement on money due on any instrument in writing which does not specify a rate of interest and which is not covered by IC 24–4.5 or this article;"

is not such a case. The insurance policy issued by Nationwide provides for a thirty thousand dollar ($30,000) death benefit. Thus, the amount of the claim is clearly ascertainable. Where the terms of the contract make the claim ascertainable, prejudgment interest is allowable at the statutory rate from the time the principal amount was demanded or due, in the absence of an express contractual provision specifying the interest rate. *Blue Valley Turf Farms v. Realestate Marketing & Development, Inc.*, (1981) Ind.App., 424 N.E.2d 1088; *Town & Country Mutual Insurance Co. v. Savage*, (1981) Ind.App., 421 N.E.2d 704.

When an amount is considered to be due under an insurance contract was discussed by this court in *United Farm Bureau Family Life Insurance Co. v. Fultz*, (1978) Ind. App., 375 N.E.2d 601. The plaintiff in *Fultz* had applied for benefits under a life insurance policy on her deceased husband's life. The defendant insurance company refused to pay the benefits to the plaintiff because of a question of the proper beneficiary. Although the plaintiff had been tried and acquitted of her husband's murder, the defendant contended there was still a possibility the plaintiff was an ineligible beneficiary and thus it could not pay the benefit to her. A jury returned a verdict for the plaintiff, and she was awarded compensatory damages, eight percent (8%) interest, and punitive damages. On appeal, this court upheld the compensatory damages and interest awards, and reversed the punitive damages. In discussing the interest award, Judge Lybrook stated at 611–12:

> "In the case at bar the insurance contract between Robert and Farm Bureau gave Chris certain third party benefits upon the happening of a certain contingency, that is, Robert's death. When Robert died and Chris made application for the proceeds, the amount of the proceeds became due and owing to the proper beneficiary. Even though the proper beneficiary could not be determined at the time of Chris' demand, the proceeds of the policy nevertheless became due and owing to someone. By retaining posses-

sion of the funds Farm Bureau brought into play the above mentioned statute."

In the case at bar, Mrs. Neville made application for the death benefit under the policy on November 13, 1973. Under the terms of the insurance policy, Nationwide was to pay all benefits under the policy immediately upon receipt of due proof. Thus, the thirty thousand dollar death benefit was due under the policy when due proof was furnished. Mrs. Neville furnished such proof on November 13, 1973. Since both the amount of the claim and the due date were readily ascertainable, we find the trial court did not err in awarding prejudgment interest. Although the trial court apparently awarded prejudgment interest on a different theory, this is a general judgment which we will uphold if sustainable under any theory, *Indiana & Michigan Electric Co. v. Schnuck*, (1973) 260 Ind. 632, 298 N.E.2d 436. We note also that the trial court awarded prejudgment interest from February 21, 1974 to the date of judgment. Although February 21, 1974 is not the date when the death benefit became due, the award of interest is within the evidence. Since Mrs. Neville has not requested the amount of interest be changed, we will not disturb the amount awarded by the trial court.

*Issues Six and Seven*

Inasmuch as these issues deal with the punitive damages award of the judgment which we have reversed, we need not discuss these issues.

*Issue Eight*

The trial court gave to the jury two instructions which dealt with the exclusions or conditions under the heart or circulatory malfunction coverage of the policy. Nationwide contends those instructions were erroneous because they required Nationwide to prove it was not liable for the death benefits under the policy. Since both of the instructions dealt with the heart or circulatory malfunction coverage and we have affirmed the judgment for compensatory damages under the injury provision of the policy, we need not discuss this issue.

*Issue Nine*

The trial court gave to the jury Plaintiff's Final Instruction No. 1 which stated at 799 of the Record:

"It is a rule of contract law in general, and of insurance law in particular, that a written agreement such as an insurance policy should be construed *against* the party who has drawn the instrument in the event there is doubt as to its meaning. When the meaning of policy terms is ambiguous in determining what benefits and duties the insurance company owes you are entitled not only to consider the words of the policy alone, but you may also consider the reasonable expectations of the public and insured as to coverage. If you find from the evidence presented in this case that ambiguous terms or provisions exist in the insurance policy in question, then defendant is not entitled to take advantage of such ambiguity to justify a refusal to pay the plaintiff."

On appeal, Nationwide contends this instruction was erroneous for four reasons. First, Nationwide states the insurance policy was negotiated by the parties and thus the rule that an insurance contract should be construed against the party who has drawn it does not apply. Second, Nationwide contends the instruction fails to inform the jury as to the primary rules of contract construction which should be applied prior to simply construing an ambiguity against the drafter of the instrument. Third, the instruction is erroneous, Nationwide argues, because it tells the jury it can consider the reasonable expectations of the public and insured as to coverage which is the incorrect standard to be applied. Finally, Nationwide contends the instruction is erroneous because it does not tell the jury how to construe an ambiguity, but rather tells the jury how Nationwide cannot construe an ambiguity.

With regard to Nationwide's first contention, we find the statement in the Plaintiff's Final Instruction No. 1 that an insurance policy should be construed against the party who has drawn the instrument when there is an ambiguity is a correct statement of the law. *See Town & Country Mutual Insurance Co. v. Owens,* (1968) 143 Ind.App. 522, 241 N.E.2d 368, *trans. denied* (1969); *Wabash Life Insurance Co. v. Hacker,* (1960) 130 Ind.App. 342, 164 N.E.2d 666. We do not agree with Nationwide that such a rule should not be applied in this case because the contract was negotiated. Although it is true that IVFA and Nationwide discussed what coverage IVFA wanted and Nationwide would provide, the policy was provided by Nationwide on its letterhead. From such evidence it could reasonably be inferred that Nationwide drafted the policy language, especially since there was no evidence that IVFA chose or negotiated the language in the policy. However, even if the evidence would not support the giving of Plaintiff's Final Instruction No. 1, reversal would not be necessary. Although it is error to give an instruction on an issue not supported by the evidence, the giving of such an instruction does not require reversal where no prejudice results to the appellant. *Baker v. Mason,* (1968) 253 Ind. 348, 242 N.E.2d 513. In this case no prejudice would arise if Plaintiff's Final Instruction No. 1 were erroneously given because the ambiguity within the policy with which the parties were concerned was under the heart or circulatory malfunction coverage. As we have already stated, the jury's verdict on compensatory damages is sustainable under the injury coverage of the policy. An ambiguity within the heart or circulatory malfunction coverage of the policy is irrelevant.

Nationwide's second contention of error with regard to Plaintiff's Final Instruction No. 1—*i.e.,* that the instruction failed to inform the jury about the primary rules of contract construction—is waived. If Nationwide desired a more specific or complete instruction on the subject of contract construction, it should have tendered such an instruction. *Anderson v. Taylor,* (1972) 154 Ind.App. 217, 289 N.E.2d 781.

The third objection which Nationwide has to Plaintiff's Final Instruction No. 1 is also waived. The objection made at trial was no

more than a statement that the instruction was improper. Such an objection raises no question on appeal. *Hershberger v. Brooker*, (1981) Ind.App., 421 N.E.2d 672, *trans. denied.*

Finally, Nationwide's fourth contention of error is waived. Nationwide did not object to the instruction on this basis at trial. Thus, it may not raise this ground for objection on appeal. *Ralston v. State*, (1980) Ind.App., 412 N.E.2d 239, *trans. denied.*

### Issue Ten

Nationwide contends the trial court erred in giving to the jury Plaintiff's Final Instruction No. 2 which dealt with the construction of exclusionary provisions in an insurance contract. Inasmuch as this allegation of error pertains to the heart or circulatory malfunction coverage of the policy and we have affirmed the judgment of the trial court under the injury coverage of the policy, we need not discuss this issue.

### Issue Eleven

Finally, Nationwide argues the trial court's instructions on punitive damages were erroneous. Since we have already reversed the trial court's judgment on punitive damages, we need not discuss this issue.

The judgment of the trial court is affirmed in part and reversed in part in conformity with this opinion. Costs of this appeal are to be shared equally by the parties.

NEAL and ROBERTSON, JJ., concur.