621 N.E.2d 371 (1993)
In the matter of S.T. and L.T., Children under the Age of Eighteen Years.
Clark County Division of Family and Childrens Services, Appellant-Respondent,
v.
DORIS TURNER, Appellee-Petitioner.
No. 10A05-9210-JV-376.
Court of Appeals of Indiana, Fifth District.
October 5, 1993.
*372 William P. McCall III, Jeffersonville, for appellant-respondent.
Stephen W. Voelker, Jeffersonville, for appellee-petitioner.
BARTEAU, Judge.
When parents fail to pay court-ordered child support to the guardians of their children who have been made wards of the welfare department, is the welfare department liable to the custodians for the amount of unpaid support? The trial court answered this question in the affirmative and ordered the Clark County Welfare Department (Department) to pay Doris Turner, the custodian and guardian ad-litem of S.T. and L.T., $74,124.37 for nearly fourteen years of back support (plus interest). The Department appeals.

FACTS
After extensive involvement with the Department, S.T., born on February 22, 1974, and L.T., born on January 6, 1977, were adjudicated to be Children in Need of Services (CHINS) and placed in the custody of the Department in October, 1977. In February, 1978, Doris Turner, the children's paternal grandmother, was appointed guardian ad-litem of the children. Pursuant to an agreed entry between the Department, Turner and the children's mother, the children were made wards of the Department and placed in Turner's custody under a "free relative placement." The parents were ordered to pay $28.00 per week/per child in support.
The parents made support payments from March, 1978, to June, 1978, which went directly to Turner from the court clerk. Neither the Department nor Turner received additional support payments after June of 1978. In January, 1979, the Department closed its file in this case and ceased its involvement with the children. Mother and Father visited the children at Turner's home occasionally; however, at no time did Turner question the parents about child support payments.
Turner initiated this action in October, 1991, by filing a "Petition to Award Child Support, Attorney's Fees, and Damages For Breach of a Fiduciary Duty." At that time, Mother and Father were divorced and both had filed for bankruptcy. L.T was fourteen and still living with Turner; however, Turner did not know where S.T., who had turned eighteen, was living. In her petition, Turner alleged that the Department owed a fiduciary duty to collect the child support and asked the court to 1) order the Department to pay her over $160,000 "for her use and benefit of the children"; 2) alternatively, that the parents be ordered to pay her or to reimburse the Department any sums it has to pay; 3) award her attorney fees; and 4) declare S.T. emancipated. The trial court determined that the Department had breached the terms of the agreed entry and ordered the Department to pay Turner $74,125.37, to be held by Turner for the use and the *373 benefit of the girls until they reach 21. The court also ordered S.T. emancipated and that Turner replace the Department as the guardian of both S.T. and L.T. There was nothing in the order with respect to the parents' obligation, if any, to reimburse the Department.
The trial court made the following findings of fact and conclusions of law, in relevant part:
On February 27, 1978, after the Welfare department filed a petition, Toni Turner as the natural mother, Doris as the guardian ad litem, and the Welfare Department entered into an agreement. Under the agreement, the children were made wards of the Welfare Department. At the request of Doris, as the guardian ad litem, and Toni Turner, Doris was awarded custody of the children as their guardian ad litem. This was to prevent the children from remaining in foster care.
On February 27, 1978, this court ordered Toni Turner and the natural father, William Michael Turner, to pay child support of $28.00 per week per child, plus reasonable medical and dental expenses. .. .
Toni Turner and the Welfare Department agreed that Toni Turner would pay to the Welfare Department $28.00 per week per child for the support and maintenance of the children, plus reasonable medical and dental expenses.
The judgment this court entered on February 27, 1978, was never altered, modified or revoked.
Since the parties, except William M. Turner, consented to the judgment, the court finds that a contract existed between Doris Turner, the Welfare Department, and Toni Turner.
A judgment by consent or agreement may be entered and given effect as to any matters of which the court has general jurisdiction, without regard to the pleadings, and even though the pleadings would not, in a contested case, authorize such a judgment. 17 I.L.E. Judgment § 76.
This agreed judgment required Toni Turner to pay the Welfare Department $28.00 per week per child for the support and maintenance of the children.
The Welfare Department breached this agreement.
(R. 226-31).

DISCUSSION
The trial court sua sponte entered findings of fact and conclusions of law. We will therefore treat the verdict as a general verdict, with the special findings controlling only as to those issues they cover. Quebe v. Davis (1992), Ind. App., 586 N.E.2d 914, 917. A general judgment will be affirmed upon any legal theory consistent with the evidence, and this court neither weighs the evidence nor judges witness credibility. Id. A general judgment will be reversed on appeal only when it is clearly erroneous. Id.
The Department argues that the trial court's order is contrary to Indiana law because it, in effect, shifted the burden of supporting the children from the parents to the Department. In Indiana, parents have a common law duty to support their children. Crowe v. Crowe (1965), 247 Ind. 51, 211 N.E.2d 164; Elbert v. Elbert (1991), Ind. App., 579 N.E.2d 102; In re Marriage of Truax (1988), Ind. App., 522 N.E.2d 402, trans. denied; Bill v. Bill (1972), 155 Ind. App. 65, 290 N.E.2d 749. This duty exists apart from any court order or statute. Truax, 522 N.E.2d at 406. Further, in most jurisdictions, this obligation does not cease merely because the parents do not have legal custody of their children. See 59 Am.Jur.2d Parent and Child § 59 (1987). We also note that child support obligations are not dischargeable in bankruptcy. Truax, 522 N.E.2d at 406.
Turner concedes that the parents owed the children the duty to support them. However, she argues that the Department had a duty under the 1978 dispositional order to collect the support from the parents, even if that required additional legal action. The dispositional order provides in relevant part:

*374 ... by agreement of the parties, it is agreed that the petition of the Clark County Department of Public Welfare requesting that the said children be made wards of the Clark County Department of Public Welfare is granted.
It is further agreed by Toni Turner, the mother of said children, that the parents of said children, namely, William Michael Turner and Toni Turner, will pay to the Clark County Department of Public Welfare for the support and maintenance of said children the sum of $28.00 per week per child, plus reasonable medical and dental expenses, the first payment being due and payable on the 4th day of March, 1978, and continuing each week thereafter until the further order of this Court. Welfare has agreed to place said children with their grandparents, namely, William R. Turner and Doris Turner, and that the visitation rights with said children shall be left to the discretion of the Clark County Department of Public Welfare.
IT IS THEREFORE, CONSIDERED, ORDERED AND DECREED that said children, namely, [S.T. and L.T.], be, and hereby are, made wards of the Clark County Department of Public Welfare.
IT IS FURTHER CONSIDERED, ORDERED, AND DECREED that the natural parents of said children ... be, and they hereby are, ordered to pay toward the support and maintenance of said children, the sum of $28.00 per child per week plus reasonable medical and dental expenses, the first payment being due and payable on the 4th day of March, 1978, and continuing until the further order of this Court, said sums to be paid to the Clerk of the Superior Court of Clark County, and to be paid by the Clerk to the Clark County Department of Public Welfare.

IT IS FURTHER CONSIDERED, ORDERED, AND DECREED that the Clark County Department of Public Welfare shall place said children in the home of the grandparents of said children, namely, William R. Turner and Doris Turner, and that the Clark County Department of Public Welfare shall provide for reasonable visitation rights for said parents with said children.
(R. 39-40), emphasis supplied.
Turner argues that because the support was to be paid to the Department, the Department had an affirmative duty to collect the money from the parents. However, we find nothing in the above order which requires the Department to collect the support from the parents, nor is such requirement imposed by law. The juvenile code as it existed at the time of the dispositional order permitted the court to order a parent or parents to pay support for the child "in such a manner as the court may direct." I.C. XX-X-X-XX (Burns Statute Anno. 1946, superseded).[1] However, there was nothing in the juvenile code which placed an affirmative duty on the Department to enforce such an order.[2] Absent such a duty, the trial court erred in ordering the Department to pay the support.
Turner also argues that the Department, as the guardian of the children, breached its fiduciary duty to the children. She cites I.C. 29-3-8-3, in support. This argument is faulty because the Department was not appointed the children's guardian. Rather, the order specifically states that the children were "made wards of the Clark County Department of Public Welfare," and placed in the Turner home. Under the juvenile code, the court had the *375 option of 1) placing the children in the custody of a relative or other fit person; 2) committing the children to a public institution or agency; 3) making the child a ward of the court, a ward of the department of public welfare of the county, or a ward of any such licensed child placing agency in the state; or 4) making any further disposition deemed to be in the best interest of the children. I.C. XX-X-X-XX (Burns supp. 1976, superseded).
The term "ward" was not defined in the juvenile code. However, with reference to minors, a "ward" has been defined as an "`infant placed by authority of law under the care of a guardian, and such an infant is a ward of the court appointing the guardian.'" In re Jennings (1977), 68 Ill.2d 125, 11 Ill.Dec. 256, 259, 368 N.E.2d 864, 867, (quoting 39 C.J.S. Guardian and Ward § 2 (1976)). A court from Ohio explained wardship as it pertains to juveniles as follows:
A summary of applicable statutes and cases indicates that whenever any court makes any authorized order with reference to any person that is continuing in nature, as distinguished from being final when issued, so that the court issuing such order may in its discretion and without the commencement of a new proceedings change it at some unspecified time in the future, that person is a ward of the court. Thus, children under the jurisdiction of the juvenile court are wards of such court.
In re Wolfe (1962), Ohio Juv., 26 Ohio Op.2d 274, 187 N.E.2d 658, 662 (citations omitted). Thus, where the relationship between the court and the child is considered to be continuing in nature, as is the case in CHINS proceedings, the child is considered a ward of the court. Further, the court may make a child a ward of the court without itself becoming the child's guardian.
Likewise, making children "wards of the welfare department" indicates that the Department's relationship with the children is one which is continuing in nature. It does not, as Turner argues, mean that the Department has been appointed guardian of the children. We therefore reject Turner's argument that the Department had a fiduciary duty to the children as their guardian.
The trial court's order that the Department pay Turner for support which the parents have failed to pay is hereby reversed.[3]
SHARPNACK, C.J., and RUCKER, J., concur.
NOTES
[1] I.C. XX-X-X-XX provided:

Whenever a child is committed by the court to custody other than that of its parent or parents, the court may, after giving the parent or parents reasonable opportunity to be heard, adjudge that such parent or parents shall pay in such manner as the court may direct, such sum as will cover in whole or in part the support of such child, and if such parent shall willfully fail or refuse to pay such sum, he may be proceeded against as provided by law for cases of desertion or failure to provide subsistence.
(emphasis added).
[2] We note that Turner's argument would also place on the clerk of the court the duty to enforce the support payments since the payments were to be made to the clerk of the court and then to the Department. However, there is no basis for imposing such a duty on the clerk.
[3] We make no determination as to whether the parents may be ordered to pay delinquent support as this issue has not been adjudicated and is not before this court.