**THOR ELECTRIC, INC., Appellant–Third–Party Plaintiff–Cross Appellee,**

v.

**OBERLE & ASSOCIATES, INC., Appellee–Plaintiff–Cross Appellant,**

and

**Wausau Insurance Companies, Appellee–Third–Party Defendant.**

No. 33A05–9812–CV–614.

Court of Appeals of Indiana.

Dec. 18, 2000.

David J. Theising, Christopher & Taylor, Indianapolis, Indiana, Attorney for Appellant.

Robert J. Maley, Richmond, Indiana, John R. Maley, Barnes & Thornburg, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

BROOK, Judge

### Case Summary

Appellant-third-party plaintiff Thor Electric, Inc. ("Thor") appeals the trial court's judgment in favor of appellee-plaintiff Oberle & Associates, Inc. ("Oberle"). Oberle cross-appeals the trial court's award of attorney fees to Thor. We affirm in part, reverse in part, and remand with instructions.

### Issues

Thor raises two issues for our review, which we restate as follows:

I. whether the trial court erred in its computation of the prejudgment interest awarded to Thor; and

II. whether the trial court erred in finding that there was insufficient evidence to support Thor's claim of damages for lost bonding capacity.

On cross-appeal, Oberle raises one issue for our review, which we restate as whether the trial court erred in awarding Thor attorney fees as consequential damages in Thor's breach of contract action against Oberle.

### Facts and Procedural History

This case arises from the parties' involvement in the renovation of the Leland Hotel in Richmond, Indiana ("the project"). Richmond Hotel Limited ("the Owner") retained Oberle as the general contractor on the renovation project. Owner and Oberle entered into a written construction contract on May 26, 1985. Thereafter, on July 17, 1985, Oberle entered into a written contract with Thor, retaining Thor as a subcontractor to perform specified work on the project, including plumbing, heating, ventilation, and air conditioning. On August 7, 1985, Thor, in turn, entered into a subcontract with Hill Brothers Plumbing & Heating, Inc. ("Hill") to perform plumbing work on the project. Thor also retained Godby Brothers, Inc. ("Godby") for heating, cooling, ventilation, and sheet metal work on August 12, 1985. Under the Oberle/Thor contract, Thor was required to furnish Oberle with payment and performance bonds in the contract amount, which Thor provided on September 6, 1985, with Fidelity & Deposit Company ("F & D") as surety. On the same date, Daniel Stamper ("Stamper"), president of Thor, entered into an agreement of indemnity with F & D as indemnitor.

The Oberle/Owner contract was a "cost plus" contract whereby Oberle was to be paid for its costs of construction, plus a fee, with a maximum contract price of $3.6 million, subject to adjustments. Simulta-

neously with that agreement, Oberle and Owner entered into an escrow agreement appointing the First National Bank of Richmond as agent to hold five percent of the amounts payable to Oberle as retainage until the project was completed. Pursuant to the contract, Oberle provided Owner with payment and performance bonds with Wausau Insurance Companies ("Wausau") as surety.

The Oberle/Thor contract specified a contract price of $1,558,250, subject to any addition and/or deductions, for Thor's work. Under the contract, Thor was required to submit monthly invoices to Oberle. Oberle would then pay Thor ninety-five percent of the invoiced amounts five days after Oberle was paid by the Owner. Thor would receive the five percent retainage upon satisfactory completion of the work. Should Oberle fail to pay Thor, the contract provided that Thor could stop work until payment of the amount owed and the contract price would be adjusted for the additional costs of shutdown, delay, and start-up. The contract did not expressly provide for the recovery of attorney fees or other damages.

Through the course of the project, Oberle paid Thor ninety-five percent of the contract amounts. In 1986, the project experienced financial difficulties. As of May 30, 1986, Oberle had not been paid over $760,000 of its contract amount. On June 11, 1986, Owner executed a promissory note in favor of Oberle for $225,000 to be paid on September 5, 1986, which Owner failed to pay when due. On April 27, 1987, Oberle filed suit against Owner on the promissory note. On June 15, 1987, Oberle filed a third-party complaint against Thor, Godby, and Hill to answer as to any lien or claim they may have against the project. On August 11, 1987, Thor filed its answer and cross-claim.

In its cross-claim, Thor sought payment of its retainage from Oberle. Thor was entitled to $82,633.30 in retainage under the Oberle/Thor contract. Thor also sought consequential damages for damage to its business reputation and lost bonding capacity as well as attorney fees. Additionally, Thor sought prejudgment interest on the retainage. Thor failed to pay its subcontractors; thus, Godby and Hill filed claims against Thor and F & D for retainages due under their subcontracts with Thor. F & D paid Godby and Hill's claims under the payment bond issued on behalf of Thor.

On July 18, 1995, the trial court dismissed all claims except Thor's claims against Oberle and Wausau and F & D's claims against Thor and Stamper. A bench trial on these remaining claims was held in August and October 1995. On July 2, 1998, the trial court rendered its judgment, awarding Thor attorney fees, prejudgment interest, and damages against Oberle; awarding F & D damages against Thor and Stamper; and ordering that Thor take nothing against Wausau.

On July 17, 1998, Oberle filed its motion to correct error and motion for stay of execution of judgment. On August 28, 1998, the court held a hearing on the motion. Approximately two weeks later, the court entered its order on the motion, reducing Thor's judgment against Oberle by approximately $1,500 in attorney fees, but otherwise denying Oberle's motion to correct errors. The court also ordered execution of the judgment stayed upon Oberle's posting of a bond in the amount of $220,000.

## Discussion and Decision

### I. Prejudgment Interest

Thor contends that the trial court erred in computing the prejudgment interest. Specifically, Thor asserts that the trial court improperly relied on Indiana Code Section 34–51–4 [1] in determining the inter-

---

1. Indiana Code Section 34–51–4–9 provides: "The court shall compute the prejudgment interest at the simple rate of interest determined by the court. The rate set by the court may not be less than six percent (6%) per year and not more than ten percent (10%) per

est rate. Thor argues that the contract provided the appropriate interest rate: prime rate plus two percent. In the alternative, Thor contends that the proper interest rate is determined by Indiana Code Section 24–4.6–1–102.[2] In response, Oberle argues that the award of prejudgment interest was improper because the damages and the due date were not readily ascertainable. Alternatively, Oberle asserts that the determination of the amount of prejudgment interest is discretionary. Thus, the trial court properly looked to the tort prejudgment interest statute for guidance in determining the interest rate to be applied.

### A. Entitlement to Prejudgment Interest

We first address Oberle's argument that Thor is not entitled to prejudgment interest. Oberle contends that the damages were not readily ascertainable because Thor had not completed approximately $10,000 of the work. Further, Oberle argues that the due date was not ascertainable because it was uncertain when Thor satisfactorily completed the work. Thor responds that it had substantially complied with the requirements of its contract with Oberle and therefore, as the trial court determined, it was entitled to full payment of the retainage upon the date of completion.

When reviewing a decision regarding an award of prejudgment interest, we review for an abuse of discretion. *Bopp v. Brames*, 713 N.E.2d 866, 872 (Ind. Ct.App.1999), *trans. denied.* "We note that the crucial factor in determining whether damages in the form of prejudgment interest are allowable is whether the damages were ascertainable in accordance with fixed rules of evidence and accepted standards of valuation. An award of prejudgment interest is proper only where a simple mathematical computation is required." *Id.; see also Hooker Builders, Inc. v. Smalley*, 691 N.E.2d 1256, 1258 (Ind.Ct.App.1998) ("Damages are readily ascertainable where the trier of fact need not exercise its judgment to assess the amount of damages."), *trans. denied; Firstmark Standard Life Ins. Co. v. Goss*, 699 N.E.2d 689, 693 (Ind.Ct.App.1998) ("An award of prejudgment interest in a contract claim is warranted if the terms of the contract make the claim ascertainable and the amount of the claim rests on mere mathematical computation."), *trans. denied.*

Here, the damages were readily ascertainable. Oberle retained five percent of the contract amount until Thor satisfactorily completed the work. Thus, the amount of damages could be easily determined by a simple mathematical computation.[3] The due date was also readily ascertainable. Thor was entitled to payment upon completion of the work. The evidence reveals that Robert Overtoom ("Overtoom"), a project manager for Oberle, inspected the work on February 21, 1987. He created a punch list of things to be completed, which Thor fulfilled on March 26, 1987. Thor notified Oberle of the completion, and Oberle acknowledged receipt of operation manuals and drawings. In a January 1992 letter, Overtoom stated that Thor had satisfactorily completed the work according to project specifications and deadlines. Another building inspector, Ronald Maze, testified that Thor had not completed approximately $10,000 of the

---

year." The time for accrual of prejudgment interest in tort actions may not exceed forty-eight months. IND.CODE § 34–51–4–8.

**2.** "When the parties do not agree on the rate, interest on loans or forbearances of money, goods or things in action shall be at the rate of eight percent (8%) per annum until payment of judgment." IND.CODE § 24–4.6–1–102. Interest accrues from the date payment is due or demanded until payment. *See* IND. CODE § 24–4.6–1–103; *Nationwide Mut. Ins. Co. v. Neville*, 434 N.E.2d 585, 598 (Ind.Ct. App.1982).

**3.** $1,652,666.00 (total contract amount) × .05 (percent retained) = $82,633.30 (retainage owed to Thor).

work. However, as the trial court noted, $10,000 represents approximately one-sixth of one percent of the contract price, and therefore, Thor substantially completed the work. Consequently, Thor was entitled to its retainage on March 26, 1987. As the damages are readily ascertainable, we find no error in the trial court's conclusion that Thor was entitled to prejudgment interest. We now address Thor's arguments regarding the applicable interest rate.

## B. Contractual Interest Rate

Thor first contends that the contract provides the appropriate rate for the determination of prejudgment interest. Specifically, Thor argues that its contract with Oberle contains a flow-through provision that incorporates the provisions of the contract between Oberle and Owner into the contract between Oberle and Thor. Based on the flow-through provision, Thor contends that the proper interest rate is the local prime rate plus two percent. Oberle counters that Thor failed to establish that the interest provision of the Oberle/Owner contract applies to the Oberle/Thor contract.

 Construction of the terms of a written contract is a pure question of law for the court; thus, our standard of review is de novo. *Peoples Bank & Trust Co. v. Price,* 714 N.E.2d 712, 716 (Ind.Ct.App. 1999), *trans. denied.* "Words used in a contract are to be given their usual and common meaning unless, from the contract and the subject matter thereof, it is clear that some other meaning was intended." *Exide Corp. v. Millwright Riggers, Inc.,* 727 N.E.2d 473, 478–79 (Ind.Ct.App.2000), *trans. denied.* Further, "[w]ords, phrases, sentences, paragraphs, and sections of a contract cannot be read alone"; rather, "[t]he entire contract must be read together and given meaning, if possible." *Id.* at 479. Thor relies on the following contract provision in its claim for interest at the prime rate plus two percent:

The SUBCONTRACTOR shall be bound to the CONTRACTOR by the terms of this Agreement and, to the exten[t] that provisions of the Contract Documents between the OWNER and CONTRACTOR apply to the WORK of the SUBCONTRACTOR as defined in this Agreement, the SUBCONTRACTOR shall assume toward the CONTRACTOR all the obligations and responsibilities which the CONTRACTOR, by those Documents, assumes toward the OWNER and the ARCHITECT, and shall have the benefit of all rights, remedies and redress against the CONTRACTOR WHICH THE CONTRACTOR, by those Documents, has against the OWNER, insofar as applicable to this Subcontract, provided that where any provision of the Contract Documents between the OWNER and CONTRACTOR is inconsistent with any provision of this Agreement, this Agreement shall govern.

A payment provision in the Oberle/Owner contract provides for interest in the event that Owner fails to make timely payments to Oberle. Specifically, the Oberle/Owner contract provides:

If the OWNER should fail to pay the CONTRACTOR at the time the payment of any amount becomes due, then the CONTRACTOR may, at any time thereafter, upon serving written notice, elect to borrow the amount of such unpaid payment under its own line of credit and charge the interest and expenses of such borrowing as an additional cost and increase in the Price. Whether or not the CONTRACTOR elects to borrow such funds under its own line of credit, when overdue payments are paid, they shall include interest from the date of payment is due at a rate not less than the rate the CONTRACTOR is paying on its most recent bank loan, or if no such loan, at two percent above the prime rate for such loans then prevailing in the community.

Thor contends that the flow-through provision set forth *supra* incorporates the interest rate recited in the Oberle/Owner contract into its contract. We disagree.

The language of the flow-through provision clearly provides that the incorporation is limited to the *work* provisions of the Oberle/Owner contract as applicable to Thor. For instance, the Oberle/Owner contract establishes the timing of the different phases of the project and the scope of the work. Likewise, the Oberle/Thor contract provides: "The SUBCONTRACTOR shall perform all the work required by the Contract Documents including furnishing all the materials, equipment and labor required for such WORK, according to the Plans and Specifications and SUBCONTRACTOR's Proposal. . . ." Hence, the work provisions are limited to the specific performance of the work—materials used, labor, and timing—and as such do not include the payment provisions of the Oberle/Owner contract. Consequently, the flow-through provision does not incorporate the interest rate provision of the Oberle/Owner contract into the Oberle/Thor contract.

Furthermore, we note that while the Oberle/Owner contract provides for, *inter alia*, interest in the event of late payment, the Oberle/Thor contract provides for stoppage of work in the event of late payment[4] and is silent on the issue of interest. In addition, we recognize a public policy interest in allowing subcontractors to negotiate a price without being constrained by the contractor and owner's negotiated price and method of payment. It is to be expected that a subcontractor would look to the agreement between the owner and contractor for the project specifications and materials requirements in submitting a bid to the contractor. However, the subcontractor is free to negotiate his financial arrangements. We conclude that the application of the flow-through provision is limited to the *work* provisions in the Oberle/Owner contract; therefore, the contract does not provide the interest rate to be applied in calculating prejudgment interest. Accordingly, we must look to statutory authority to determine the applicable interest rate for prejudgment interest on a contract claim.

## C. Applicable Statutory Interest Rate

Thor next contends that the trial court incorrectly applied the tort prejudgment interest statute to its claim. First, Thor contends that the tort prejudgment interest statute is inapplicable because this is a contract action, not a tort action. Second, Thor argues that the tort prejudgment interest statute does not apply because it was enacted after its cause of action accrued. Rather, Thor argues that the appropriate statutory provision is Indiana Code Section 24–4.6–1–102, which provides for eight percent interest per year until payment. Oberle responds that the trial court has discretion in determining the amount of prejudgment interest necessary to make a party whole and may look to the tort prejudgment interest statute for guidance.

### 1. Indiana Code Section 34–51–4

Indiana Code Section 34–51–4 provides for the award of prejudgment interest in tort actions. The rate of prejudgment interest is determined by the court, but may not be less than six percent annually or greater than ten percent annually. IND.CODE § 34–51–4–9. Under Indiana Code Section 34–51–4–8, the time during which prejudgment interest accrues may

---

4. The Oberle/Thor contract provides as follows:

If the CONTRACTOR does not pay the SUBCONTRACTOR through no fault of the SUBCONTRACTOR, within five (5) days from the time payment should be made as provided in paragraph 12.4, the SUBCONTRACTOR may, without prejudice to any other remedy he may have, upon ten (10) additional days' written notice to the CONTRACTOR, stop his WORK until payment of the amount ow[ing] has been received. The Contract Sum shall, by appropriate adjustment, be increased by the amount of the SUBCONTRACTOR'S reasonable costs of shutdown, delay and start-up.

not exceed forty-eight months. Based on this statute, the trial court awarded Thor prejudgment interest at a rate of ten percent for a period of forty-eight months.

However, as Thor contends, this statute is inapplicable here. The statute applies to *tort* actions. IND.CODE § 34-51-4-1 ("This chapter applies to any civil action arising out of tortious conduct."); *see Indiana Erectors, Inc. v. Trustees of Indiana Univ.*, 686 N.E.2d 878, 882 (Ind. Ct.App.1997) (noting that tort prejudgment interest statute applies to *tort* claimants and that therefore contract claimants need not meet requirements of statute to recover prejudgment interest). Thor's action is for breach of contract. Consequently, we must determine whether a different statutory provision applies.[5]

### 2. Indiana Code Sections 24-4.6-1-102 and -103

Thor contends that Indiana Code Section 24-4.6-1-102 applies in contract actions and that it is therefore entitled to interest on the unpaid retainage of $82,633.30 at the rate of eight percent per year beginning at the time of breach. Indiana Code Section 24-4.6-1-102 provides that "[w]hen the parties do not agree on the rate, interest on loans or forbearances of money, goods or things in action shall be at the rate of eight percent (8%) per annum until payment of judgment." The time of accrual is set forth in Indiana Code Section 24-4.6-1-103: "Interest at the rate of eight percent (8%) per annum shall be allowed: (a) From the date of settlement on money due on any instrument in writing which does not specify a rate of interest. . . ."

As we stated in *Blue Valley Turf Farms, Inc. v. Realestate Mktg. & Dev., Inc.*, 424 N.E.2d 1088, 1091 (Ind.Ct.App. 1981):

[F]or an award of prejudgment interest, it is only necessary to show that the obligor has breached his contract by fail-

ing to pay the appropriate amount due or demanded and that such amount can be ascertained as of a particular time in accordance with fixed rules of evidence and known standards of evaluation.

Thus, where the terms of the contract make the claim ascertainable, as is the case before us, prejudgment interest is allowable at the statutory rate of eight percent from the time the principal amount was demanded or due. *Nationwide Mut. Ins. Co. v. Neville*, 434 N.E.2d 585, 598 (Ind.Ct.App.1982); *see also Gershin v. Demming*, 685 N.E.2d 1125, 1130 n. 5 (Ind.Ct.App.1997) (noting that in a contract claim, party may recover prejudgment interest pursuant to IND.CODE §§ 24-4.6-1-102 and -103); *Gibson-Lewis Corp. v. Northern Indiana Pub. Serv. Co.*, 524 N.E.2d 1316 (Ind.Ct.App.1988) (noting that eight percent is legal rate for prejudgment interest), *trans. denied; Indiana Tel. Corp. v. Indiana Bell Tel. Co.*, 171 Ind.App. 616, 358 N.E.2d 218 (1976) (applying IND.CODE § 24-4.6-1-103 to determination of prejudgment interest in breach of contract action); *Hirsch v. Merchants Nat'l Bank & Trust Co. of Indiana*, 166 Ind.App. 497, 336 N.E.2d 833 (1975) (providing eight percent interest in action for breach of lease).

The Oberle/Thor contract provided that the five percent retainage amount of the contract would be paid to Thor upon satisfactory completion of the work. The amount, $82,633.30, was not disputed by the parties. The contract did not provide an interest rate; therefore, the statutory interest rate of eight percent is applicable. *See Blue Valley Turf Farms, Inc.*, 424 N.E.2d at 1091 (noting that application of IND.CODE § 24-4.6-1-103 is mandatory). The trial court found that Oberle had breached the contract. Thus, Thor was entitled to prejudgment interest from March 26, 1987, the date that Thor satisfactorily completed the work and was enti-

---

5. We need not address Thor's argument regarding the non-retroactivity of the tort pre- judgment statute given our resolution of its first argument.

tled to payment, until the date the execution of the judgment was stayed.

Therefore, we reverse the trial court's award of prejudgment interest and remand with instructions for the court to determine the appropriate amount of interest under the statute.

## II. Consequential Damages— Bonding Capacity

Second, Thor contends that there was sufficient evidence to support its claim of damages for lost bonding capacity. In particular, Thor argues that it was not required to prove that Oberle's breach was the *sole* cause of its damages; rather, Thor contends that it is required to prove that the breach was a *substantial factor* contributing to its consequential damages. Oberle responds that Thor failed to meet its burden of proof of damages.

 Initially, we note that Thor is appealing from a negative judgment. A negative judgment may be challenged on appeal only as being contrary to law. *Sherk v. Indiana Waste Sys., Inc.*, 495 N.E.2d 815, 817 (Ind.Ct.App.1986), *trans. denied*. "A decision is contrary to law where the evidence is without conflict and all reasonable inferences to be drawn therefrom lead to but one conclusion and the trial court has reached a different one." *Charles F. Broughton, D.M.D. v. Riehle*, 512 N.E.2d 1133, 1136 (Ind.Ct.App. 1987). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We will affirm the trial court's judgment if there is any evidence or reasonable inferences therefrom that support the judgment. *Id.*

 A party injured by a breach of contract may recover consequential damages. *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 31 (Ind.1999). Consequential damages may be awarded "when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made." *Id.* The party seeking damages must prove by a preponderance

of the evidence that the breach was the cause in fact of its loss. *See Rollins Burdick Hunter of Utah, Inc. v. Board of Trs. of Ball State Univ.*, 665 N.E.2d 914, 922 (Ind.Ct.App.1996). In determining cause in fact, this court has stated,

For a cause in fact to be a legal cause, it must have been a substantial factor in bringing about the harm. While there may be other contributing causes and more than one factor operating, the trier of fact may determine that one cause *predominates* over another in bringing about the harm.

*Fowler v. Campbell*, 612 N.E.2d 596, 602 (Ind.Ct.App.1993) (citations omitted) (emphasis added).

 Thor contends that as a result of Oberle's failure to pay, Thor was unable to pay Godby and Hill, leading Godby and Hill to file a claim against Thor, which led to loss of bonding capacity. The record reveals that Thor failed to show by a preponderance of the evidence that Oberle's breach was a *substantial* factor in Thor's loss of bonding capacity. Gary Adamson ("Adamson"), Thor's CPA, testified that had other accounts receivable been collected by Thor, it could have paid sub-subcontractors Godby and Hill. Adamson further testified that had personal loans not been made to Stamper, Thor would have been able to pay Godby and Hill. Stamper testified that Thor was subject to two Internal Revenue Service liens for failure to pay withholding taxes. Kenneth Bane ("Bane"), retired president of the Second National Bank of Richmond ("the bank"), testified concerning Thor's line of credit. Bane indicated that the bank called Thor's loan partly because of Thor's business reputation. Indeed, Bane testified that Thor had a reputation of "[n]ot completing jobs [i]n a timely manner." Regarding Stamper's reputation, Bane testified that

the biggest difficulty was [Stamper] was never delivering the requirements to the loan officer that would give the loan officer the confidence level to sustain the business relationship. Financial state-

ments were not delivered on time. Loans were not handled when they were properly due. All the things that are required for the borrower to deliver to the, to the loan officer, were always a hassle for the loan officer.

Bane further testified that the outstanding account receivable from Oberle was not the sole reason for canceling the loan.

Based on our review of the record, we cannot conclude that the trial court's decision is contrary to law. There is evidence to support the court's conclusion that Thor failed to prove by a preponderance of the evidence that Oberle's breach was the predominant cause of Thor's lost bonding capacity. Thor merely invites us to reweigh the evidence, which we cannot do. Therefore, the trial court did not err in denying Thor's claim for consequential damages.

### III. Attorney Fees

In its cross-appeal, Oberle asserts that the trial court erroneously awarded Thor attorney fees as consequential damages for the breach of contract claim. Specifically, Oberle argues that the fees were incurred in the direct prosecution of the action and therefore are not consequential damages. Further, Oberle contends that the contract did not provide for the recovery of attorney fees and that the trial court therefore erred in awarding fees to Thor. Thor responds that the award of attorney fees was proper because the fees were incurred as a result of Oberle's breach and are recoverable as consequential damages.

■■■■ Indiana follows the "American Rule" that each party involved in litigation must pay its own attorney fees. *Salcedo v. Toepp,* 696 N.E.2d 426, 435 (Ind.Ct.App. 1998). "Generally, attorney's fees are not recoverable from the opposing party as costs, damages, or otherwise, in the absence of an agreement between the parties, statutory authority, or rule to the contrary." *Swartz v. Swartz,* 720 N.E.2d 1219, 1223 (Ind.Ct.App.1999) (citation omitted).

In awarding attorney fees to Thor, the trial court relied on this court's decision in *Tolliver v. Mathas,* 538 N.E.2d 971 (Ind. Ct.App.1989), *trans. denied.* The *Tolliver* court held that the trial court properly admitted evidence of attorney fees incurred in a breach of contract action. In so doing, the *Tolliver* court stated that legal expenses were a reasonably foreseeable cost resulting from the breach and thus were recoverable as consequential damages. However, this conclusion is against the weight of authority in Indiana.

■■■ Our courts have repeatedly and overwhelmingly held that attorney fees are not recoverable absent an agreement, statute, or rule. *See Indiana Ins. Co. v. Plummer Power Mower & Tool Rental, Inc.,* 590 N.E.2d 1085, 1093 (Ind.Ct.App. 1992) (concluding that attorney fees are not recoverable as consequential damages in a breach of contract action despite the argument that such fees flow naturally from the breach and are reasonably foreseeable); *see also Kikkert v. Krumm,* 474 N.E.2d 503, 504–05 (Ind.1985) (stating that "[t]he general rule requires each party to the litigation to pay his own attorney fees. Attorney fees are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing thereof …"); *Trotcky v. Van Sickle,* 227 Ind. 441, 445, 85 N.E.2d 638, 640 (1949) (" 'Attorney's fees are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance thereof; and it has been held that the rule applies equally in courts of law and in courts of equity.' " (citation omitted)); *Depeyster v. Town of Santa Claus,* 729 N.E.2d 183, 190 (Ind.Ct.App.2000) (stating that "Indiana adheres to the American Rule, which requires parties in most instances to pay their own attorney fees absent a statute, rule, or agreement to the contrary"); *Salcedo,* 696 N.E.2d at 435 (affirming award of attorney fees where fees were provided for in contract); *Shumate v. Lycan,* 675 N.E.2d 749, 754 (Ind.Ct.App.1997) (con-

cluding that "attorney fees and costs should not be awarded for the breach of an agreement not to sue unless the agreement expressly provides for that remedy, or such an award is permitted by statute or court rule"), *trans. denied; Kokomo Med. Arts Bldg. P'ship v. William Hutchens & Assocs.*, 566 N.E.2d 1093, 1096 (Ind. Ct.App.1991) (holding that, despite appellee's argument that attorney fees were consequential damages, in the absence of a contract provision or applicable statute, the award of attorney fees was error). Thor fails to cite to a contract provision or applicable statute authorizing the award of attorney fees, and our review of the record and existing law reveals none. Therefore, we conclude that the trial court erred in awarding attorney fees to Thor.[6]

### Conclusion

Thor was entitled to prejudgment interest on its contract claim at the statutory rate. The trial court erred in relying on the tort prejudgment interest statute to determine the amount of interest awarded to Thor. Therefore, we reverse and remand this issue with instructions to apply Indiana Code Sections 24–4.6–1–102 and –103 to the computation of prejudgment interest. Second, the trial court's denial of consequential damages for lost bonding capacity was not contrary to law. The record reveals that Thor failed to prove by a preponderance of the evidence that Oberle's breach was a substantial factor in its loss of bonding capacity. Thus, we affirm the trial court's judgment on this issue. Finally, Thor was not entitled to attorney fees, as neither the Oberle/Thor contract nor existing law provided for recovery of such fees. Thus, the trial court erred in awarding Thor attorney fees as consequential damages, and we reverse the court's judgment on that issue.

6. While we recognize, strictly speaking, that attorney fees would be a foreseeable cost arising naturally and directly out of the breach, we may not ignore the clear precedent of our supreme court. *See Indiana Ins. Co.*, 590 N.E.2d at 1093. Indeed, in entering a con-

Affirmed in part, reversed in part, and remanded with instructions.

KIRSCH, J., and NAJAM, J. concur.

tract, a party may negotiate for recovery of attorney fees in the event of breach. Thus, we see no need to expand the scope of consequential damages to cover such costs when neither the contract nor existing law provides recovery.