**UNITED FARM FAMILY INS. CO., Appellant–Plaintiff,**

v.

**RIVERSIDE AUTO SALES, Appellee–Defendant.**

No. 85A04–0010–CV–460.

Court of Appeals of Indiana.

July 30, 2001.

Donald E. Currie, Delphi, IN, Attorney for Appellant.

David Magley, Wabash, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, United Farm Family Insurance Co. (United), appeals the adverse judgment on its complaint for damages against Appellee–Defendant, Riverside Auto Sales (Riverside).

We affirm.

### ISSUE

United raises one issue on appeal, which we restate as: whether the trial court's judgment is contrary to law.

### FACTS AND PROCEDURAL HISTORY

The evidence most favorable to the judgment is as follows. On February 6, 1998, James Smith, Jr. (Smith) purchased a 1995 Chrysler Concorde automobile from Riverside that came with a limited three-(3)

month/ 3000–mile warranty. Several days later, Smith returned the car to Riverside and left it overnight so they could repair an oil leak. When driving the car home the next day, he smelled gasoline, so he again returned the car to Riverside for additional repairs. When he went to retrieve his vehicle the next day, February 13, 1998, he learned that it had been damaged by fire. Smith filed a claim with his insurer, United, and received a settlement of $8,100.00.

United, as Smith's subrogee, brought this action against Riverside for breach of warranty and bailment. The matter was tried to the court on August 29, 2000, and the following evidence was presented. Larry and Dennis Schnepp own Riverside as a partnership. They testified at trial that Riverside is strictly a dealership; they do not service automobiles. Their building has three bays, but the .bays are strictly for washing and detailing. When one of their cars needs repair work, they contract out that service to several different mechanics in town. In this case, they contracted with Richard Sluss (Sluss) to fix the gasoline leak.

On the morning of the fire, Larry Schnepp arrived at Riverside at approximately 6:00 a.m., as he did every day, to check for any vandalism that might have occurred overnight. Finding none, he went on to his job as a Wabash city policeman. The next to arrive was Dick Carpenter, an employee of Riverside, who prepared the premises for the start of business every morning. He testified that he arrived at approximately 7:30 a.m. and saw Smith's car parked in one of the wash bays. He noticed vapors coming out of the engine compartment and called the fire department and Larry Schnepp.

Phil Penn was one of the firemen responding to the alarm. He testified that once they determined that it was the car, and not the building, on fire, he got inside the vehicle and was able to put it into neutral so that it could be rolled outside, away from the building, where they pried open the hood and extinguished the fire. He testified that the fire's origin appeared to be towards the rear of the engine compartment, but the cause of the fire remains unknown.

United retained the services of a fire investigator, John Paul Neal (Neal), who testified that he had examined the vehicle seven to ten days after the fire and found that the fuel rail located on top of the engine was not properly installed, the plenum was off, and the number one fuel injector was not inserted into the fuel rail itself. In addition, he found bolts from the fuel rail system and intake manifold melted into the plastic housing. In Neal's opinion, the car had been worked on before the fire. Neal testified that he spoke with Sluss during his investigation and that Sluss had confirmed that he had started to work on the vehicle at Riverside on the evening before the fire, determined that the fuel leak was at the front of the engine, and that parts would have to be ordered to remedy the problem. Sluss did not testify at trial to either corroborate or deny this statement. Because the battery was connected at the time of the fire, Neal opined on direct examination that had the key been turned on while the parts were out of place, the fuel pump would try to pressurize the system, which would cause vaporized gasoline to spray into the engine compartment and possibly ignite. According to Neal's testimony, the fire was confined to the engine compartment and the fire damage and patterns indicated that the fire had started at the center of the engine compartment, near the top of the engine. Neal also testified that he did not see anything at Riverside that would appear to have contributed to the fire.

At the conclusion of United's case, the trial court granted Riverside's motion for judgment on the evidence as to the breach of warranty claim, but denied the same as to the issue of bailment until the conclusion of the trial. On August 29, 2000, the trial court entered the following Order:

The Court finds that:

1. The auto was delivered to Riverside who then had control of the auto.

2. Riverside accepted delivery to accomplish repairs.

3. Riverside arranged for an independent contractor to make the necessary repairs.

4. The resulting damage occurred after the independent contractor made partial repairs.

5. The cause of the ignition of the fire is unknown.

6. The fuel system was not repaired properly or not yet completed.

7. Riverside kept the auto in a locked and secure facility.

8. The fire was discovered by a Riverside employee upon unlocking the garage in which the auto was stored.

9. The Defendant did not act nor did it fail to act in such a way that caused the fire damage.

10. The Defendant used reasonable and ordinary care in the storage of the auto.

The Court concludes that:

1. A bailment was created.

2. The auto was damaged prior to the return to the bailor.

3. An inference was raised that the bailee was negligent.

4. However, the bailee (Riverside) has rebutted the inference of negligence on its part.

The Court enters judgment in favor of Riverside Auto Sales. Costs to be paid by the Plaintiff.

(R. 23–24).

## DISCUSSION

United argues that the trial court committed reversible error by concluding that Riverside had rebutted the prima facie showing of negligence and by applying an incorrect standard of care.

### I. Standard of Review

 United appeals from a negative judgment. To prevail on appeal, therefore, United must demonstrate that the trial court's judgment is contrary to law. *Thor Electric, Inc. v. Oberle & Associates, Inc.,* 741 N.E.2d 373, 381 (Ind.Ct.App. 2000). A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. *Id.* In conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law *sua sponte*, we treat the verdict as a general verdict, with the special findings controlling only as to those issues they cover. *In the Matter of S.T.,* 621 N.E.2d 371, 373 (Ind.Ct.App.1993). We will affirm the trial court's judgment upon any legal theory consistent with the evidence. *Id.*

### II. Riverside rebutted inference of negligence.

 A bailment exists when one party entrusts his personal property to another for a specific purpose, after which the property is to be returned. *Stubbs v. Hook,* 467 N.E.2d 29, 31 (Ind.Ct.App.1984). While in possession of the bailed property,

the bailee must exercise the degree of care commensurate with the benefit he derives from the arrangement. *Norris Automotive Service v. Melton*, 526 N.E.2d 1023, 1026 (Ind.Ct.App.1988). Thus, absent contractual language to the contrary, when the bailment is solely for the bailee's benefit, he owes a high degree of care. *Id.* If the bailment is solely for the bailor's benefit, the bailee owes only slight care. *Id.* When, as in most cases of bailment for hire, the arrangement inures to the benefit of both parties, the bailee owes ordinary care. *Id.* Evidence that the property was received by the bailee in good condition, but returned damaged, creates an inference that the bailee failed to exercise the appropriate degree of care. *Id.* Once this inference of negligence is created, the burden of production shifts to the bailee to produce evidence to the contrary. *Id.* at 1025. "In the absence of a bailment contract creating absolute liability the bailee can rebut the inference of negligence by presenting evidence tending to prove the loss, damage, or theft was occasioned without his fault of neglect." *Id.* The determination of a bailor's compliance with the applicable standard of care is a question of fact for the trial court. *Light v. Lend Lease Transportation Co.*, 129 Ind.App. 234, 156 N.E.2d 94, 100 (1959).

■ Here, there is no dispute that a bailment was created when Smith left his automobile with Riverside to be repaired, and that the car was damaged by fire prior to its return. Hence, the trial court properly concluded that United's evidence created an inference that Riverside failed to exercise appropriate care. Ultimately, however, the trial court found that Riverside rebutted the presumption with its evidence that: 1) Riverside arranged for an independent contractor to make the repairs; 2) the fire occurred after partial repairs had been made by an independent contractor; 3) those repairs were not proper or not yet complete; 4) Riverside kept the auto in a locked and secure facility; and 5) the cause of the fire was unknown. Based on these facts, the trial court found that Riverside had used reasonable and ordinary care while in possession of the automobile, thereby rebutting the presumption of neglect or fault on its part.

■ United argues that the evidence was insufficient to rebut the presumption because Riverside failed to prove that the fire was not its fault. Specifically, it asserts "Riverside must demonstrate that it is free from negligence, and simply asserting that it does not know the cause of the fire, or how bailor's property was damaged, is insufficient." (Appellant's Brief at 7). In the absence of contractual terms imposing strict liability, however, the bailee's burden of production only requires evidence tending to prove the absence of neglect or fault. *Norris*, 526 N.E.2d at 1025. The purpose of the shifting burden of production is merely to relieve the plaintiff of the practical burden of proving what happened to his property while out of his possession. *Keenan Hotel Co. v. Funk*, 93 Ind.App. 677, 177 N.E. 364, 365 (1931). It in no way relieves the bailor of his ultimate burden of proving fault on the part of the bailee. *Id.* Thus, when Riverside met its burden by producing evidence of due care, the burden of production shifted back to United who, no longer enjoying the benefit of the inference of fault, had to then "prove the bailee failed to act in conformity with the expected standard of care." *Norris*, 526 N.E.2d at 1026. The trial court found, after hearing all the evidence, that Riverside "did not act nor did it fail to act in such a way that caused the fire damage." The record supports this conclusion; thus, there is no error.

One reasonable inference suggested by the trial court's findings, and addressed by United on appeal, is that the independent contractor, hired by Riverside to perform the repairs, was responsible for the condition of the car that led to the fire. United argues that "[t]he arrangement of the independent contractor was for the benefit of Riverside, and presumably, under its supervision and oversight ... and Riverside must therefore assume any risk and/or liability for the contractor's workmanship, or lack thereof." (Appellant's Brief at 7). United fails, however, to cite any evidence or authority for its bare assertion. Moreover, its argument is not well taken because, as a general rule, "a master generally cannot be held liable for the negligence of an independent contractor. The theory behind non-liability for independent contractors is that it would be unfair to hold a master liable for the conduct of another when the master has no control over that conduct." *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 148 (Ind. 1999) (citation omitted). Thus, the trial court did not err by failing to impose on Riverside any potential fault of its independent contractor.

### III. *Duty of Care*

United argues for the first time on appeal that the trial court applied the wrong standard of care when it found that Riverside had used reasonable and ordinary care. United reasons that because Riverside elected to take care of the gasoline leak itself, instead of having Smith obtain the repair elsewhere and submit a claim for reimbursement, the bailment arrangement was for the sole benefit of Riverside. United fails, however, to support its theory with relevant authority. Moreover, the record of proceedings is devoid of any evidence, argument or discussion of this contention before the trial court.

Therefore, to the extent this issue has not already been waived, it fails.

### CONCLUSION

For all of the foregoing reasons, the judgment of the trial court is affirmed.

SULLIVAN, J., and FRIEDLANDER, J., concur.